# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 20-cv-00561-CFC ) |
| HOSPIRA, INC. and PFIZER INC., | ) ) |
| Defendants. | ) ) ) |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY
PENDING THE RESOLUTION OF C.A. NO. 18-cv-1064-CFC-CJB**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii
I. NATURE AND STAGE OF PROCEEDINGS ............................................... 1
II. SUMMARY OF ARGUMENT ........................................................................ 2
III. STATEMENT OF FACTS ............................................................................... 3
IV. ARGUMENT .................................................................................................... 6
    A. A Stay Will Simplify the Issues and Trial of this Case ........................ 7
        1. A Stay Would Simplify Overlapping Non-Infringement Issues ................................................................................................ 7
        2. A Stay Would Simplify Overlapping Invalidity Issues ............ 10
    B. Discovery in this Case Has Not Begun and No Trial Date Has Been Set ................................................................................................ 11
    C. Amgen Will Not Be Unduly Prejudiced by a Stay ............................. 12
        1. Pfizer Promptly Filed its Motion to Stay ................................... 13
        2. The Parties' Competitive Status Will Not Be Impacted by a Stay .................................................................................................. 13
V. CONCLUSION ............................................................................................... 14

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
   No. 12-cv-1107 (GMS), 2014 U.S. Dist. LEXIS 47430 (D. Del. Apr. 7, 2014) .12

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
   No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789 (D. Del. June 25, 2010) ..............6

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1998) ...........................................................................6

*Evans Cooling Sys. v. GMC*,
   125 F.3d 1448 (Fed. Cir. 1997) .........................................................................10

*Ever Win Int'l Corp. v. Radioshack Corp.*,
   902 F. Supp. 2d 503 (D. Del. 2012) ...................................................... 12, 13, 14

*Graphic Props. Holdings, Inc. v. Toshiba Am. Info. Sys., Inc.*,
   No. 12-213-LPS 2014 U.S. Dist. LEXIS 27963 (D. Del. Mar. 5, 2014) ........ 7, 14

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*,
   No. 14-1102-LPS-CJB, 2015 U.S. Dist. LEXIS 46334 (D. Del. Apr. 9, 2015) ....6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................................6

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
   No. 12-1063-LPS-CJB, 2015 U.S. Dist. LEXIS 167153 (D. Del. Dec. 11, 2015)
   ..........................................................................................................................13

*Nestle Oil Oyj v. Dynamic Fuels, LLC*,
   No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013) .........12

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ...........................................................................8

*Orexo AB v. Actavis Elizabeth LLC*,
   371 F. Supp. 3d 175 (D. Del. 2019) ....................................................................8

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
   No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764 (D. Del. Oct. 21, 2013)
   ........................................................................................................................13

**Statutes**

42 U.S.C. § 262(*l*)(8)(B) ............................................................................................14

## I. NATURE AND STAGE OF PROCEEDINGS

Amgen Inc. and Amgen Manufacturing, Limited (collectively, "Amgen") have now brought two actions against Pfizer Inc. and Hospira, Inc. (collectively, "Pfizer") alleging patent infringement by Pfizer's Nivestym®. Nivestym® is a biosimilar version of Amgen's Neupogen® (filgrastim), which Amgen launched in the United States nearly thirty years ago. At the time of its launch in 2018, Nivestym® was at least the fourth market entrant, competing not only with Neupogen®, but two earlier-launched biosimilar products.

Amgen asserted U.S. Patent No. 9,643,997 ("the '997 patent") in *Amgen Inc. et al., v. Hospira, Inc. et al.*, No. 18-1064-CFC-CJB, D.I. 1 (D. Del. July 18, 2018) ("C.A. 18-1064"). Almost two years after filing that first suit, Amgen asserts U.S. Patent No. 10,577,392 ("the '392 patent") in the present action filed on April 24, 2020. D.I. 1. These asserted patents do not cover Neupogen® or its use; rather, they are generally directed to methods of purifying proteins but do not mention any specific protein including the protein at issue here (filgrastim). Amgen does not allege in its Complaint that it practices the asserted claims of the '392 patent in the manufacturing of its Neupogen® products. *Id*.

Pfizer has been defending itself in patent litigation brought by Amgen for two years. Amgen's decision to assert a second patent should not permit it a "do-over" on that two-year old litigation. Although Pfizer was willing to discuss coordination

1

of the two sets of patent claims with Amgen, Pfizer expected any such coordination to achieve efficiency and fairness. Pfizer therefore conditioned its consent to consolidation on an agreement by the parties to use in the consolidated case the same experts employed by the parties in C.A. 18-1064.[1] Amgen's refusal to consolidate on that condition portends that Amgen is attempting to remedy deficiencies in the expert opinions and testimony in C.A. 18-1064 by asserting a second, related patent. Pfizer therefore seeks to stay the present action pending the resolution of C.A. 18-1064 to prevent the prejudice that such a do-over would cause Pfizer and instead allow this second patent case to be resolved efficiently and fairly.

## II.    SUMMARY OF ARGUMENT

According to Amgen, this action and C.A. 18-1064 "involve identical parties, identical accused acts of infringement, the same accused process, and related patents with identical inventors, materially identical specifications, and overlapping claim terms." D.I. 16. Staying this case would ensure that overlapping issues are not unnecessarily tried twice, and would significantly simplify—if not dispose of—any remaining issues to be tried to a jury in this case. The efficiencies to be gained by

---

[1] Amgen's disclosure of a new expert to Pfizer in C.A. 18-1064, after nearly two years of litigating, flagged that concern. As Pfizer explained in seeking a protective order with respect to that new expert, Amgen should not be permitted to remedy or rehabilitate the testimony of its other experts through a new expert either in C.A. 18-1064 or this case. C.A. 18-1064, D.I. 143.

2

staying this case are especially pronounced here as the parties have yet to initiate fact discovery and no trial date has been set. Amgen would not be prejudiced by a stay of this action because Amgen never sought to enjoin the launch of Nivestym®, Amgen brings the present suit nearly two years after its first suit and also nearly two years after Pfizer's launch of Nivestym®, and Amgen faced third-party competition to Neupogen® for years before Pfizer's launch. The Court should stay this case pending final resolution of C.A. 18-1064 to promote judicial efficiency, conserve the parties' and the Court's resources, and simplify the issues (if any) to be tried in this case.

### III.   STATEMENT OF FACTS

On September 21, 2017, Pfizer submitted Biologics License Application ("BLA") No. 761080 ("Pfizer's BLA") to FDA seeking approval to market and sell a biosimilar to Amgen's Neupogen®. Amgen launched Neupogen® in the United States in 1991. Pfizer launched its biosimilar Nivestym® in 2018. At the time of its launch, Pfizer's Nivestym® was at least the fourth market entrant behind Amgen's Neupogen® (1991), Teva's Granix® (2013), and Sandoz's Zarxio® (2015).

On July 18, 2018, Amgen filed a complaint alleging that Pfizer's process for manufacturing Nivestym® infringes certain claims of the '997 patent. *See* C.A. 18-1064, D.I. 1. In that case, the parties have completed *Markman* briefing and argument. Fact and expert discovery are complete as to all issues except for Pfizer's

3

on-sale bar and public-use invalidity defenses.  A limited period of supplemental fact and expert discovery on Pfizer's on-sale-bar and public-use invalidity defenses is currently scheduled to close in January 2021.  *See* C.A. 18-1064, D.I. 129 at 3.[2]  A five-day jury trial is scheduled to begin on May 17, 2021.  *Id.*

The '392 patent issued on March 3, 2020 from a continuation of the application that issued as the '997 patent.  Both the '392 and '997 patents claim priority to an application filed in 2009, almost twenty years after the launch of Neupogen®.  Like the '997 patent, the '392 patent generally relates to methods of purifying proteins but it does not mention any specific proteins including the protein at issue here (filgrastim).  The asserted claims of the '392 patent differ from the asserted claims of the '997 patent because, *inter alia*, they eliminate the "washing" and "eluting" steps that are recited in the asserted claims of the '997 patent.  *Compare* C.A. 20-561, D.I. 1 at ¶ 95, *with* C.A. 18-1064, D.I. 49 at ¶ 84.[3]

---

[2] The parties are currently negotiating an extension to the expert deadlines pursuant to Magistrate Judge Burke's June 3, 2020 Order.  C.A. No. 18-1064, D.I. 147.

[3] This Court's construction of the "eluting" step in the '997 patent was informed by *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1029 (Fed. Cir. 2019), in which the Federal Circuit held that Sandoz's manufacturing process for Zarxio® did not infringe the "washing" and "eluting" limitations in a related patent.  C.A. 18-1064, D.I. 64 at 82:6-16.  Amgen subsequently stipulated in patent litigation involving Mylan's PEGylated version of filgrastim that Mylan's accused process did not meet those limitations in the '997 patent.  *Amgen Inc. et al. v. Mylan Inc. et al*, No. 17-cv-01235, D.I. 283 at ¶ 1 (W.D. Pa. Sept. 17, 2019).

After Amgen notified Pfizer that it intended to assert the '392 patent, the parties discussed approaches for coordinating Amgen's '392 patent claims with the earlier-filed 18-1064 action. Pfizer was amenable to consolidating the cases provided that the parties agreed to use in the consolidated case the same experts employed by the parties in C.A. 18-1064. C.A. 18-1064, D.I. 143, Ex. 4. As Pfizer explained to Amgen, using the same experts in a consolidated action would have enabled the parties to quickly and efficiently build on the two-year record in C.A. 18-1064 and decrease the likelihood of jury confusion that could result from having different experts opine on overlapping issues in related patents at trial. *Id.* Consolidating this case (where expert discovery has yet to begin) with C.A. 18-1064 (where expert discovery is nearly finished) without Pfizer's proposed condition would have been prejudicial to Pfizer for the additional reason that it would have provided Amgen an avenue to seek a do-over of expert discovery in a consolidated action. Amgen rejected Pfizer's proposal regarding consolidation.

In view of the parties' impasse with respect to consolidation, and recognizing that the resolution of C.A. 18-1064 was likely to streamline (if not moot) this case, Pfizer proposed staying this case. Amgen again did not accept Pfizer's proposal, nor did Amgen make a counter-proposal. Although Pfizer had already notified Amgen that it intended to move to stay the present action and would therefore not be serving its invalidity contentions for the '392 patent, Amgen served its disclosure of asserted

claims and infringement contentions on May 26, 2020. D.I. 14. There have been no other substantive exchanges to date in this case. The parties have neither held a Rule 26(f) conference nor initiated discovery and the Court has not entered a case schedule or set a trial date.

## IV.     ARGUMENT

Whether or not to stay litigation is a matter left to the Court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998). In exercising this discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The factors courts typically consider in deciding how to exercise this discretion include: (1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See, e.g.*, *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. 14-1102-LPS-CJB, 2015 U.S. Dist. LEXIS 46334, at *2-3 (D. Del. Apr. 9, 2015); *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789, at *10-12 (D. Del. June 25, 2010). In this case, all three factors weigh strongly in favor of a stay.

### A.     A Stay Will Simplify the Issues and Trial of this Case

A stay will promote litigation and judicial economy by ensuring that overlapping issues are not unnecessarily tried twice in duplicative litigation. As explained further below, a stay would significantly simplify and potentially moot both the non-infringement and invalidity issues to be tried to a jury in this case. This simplification factor weighs in favor of a stay. *See, e.g.*, *Graphic Props. Holdings, Inc. v. Toshiba Am. Info. Sys., Inc.*, No. 12-213-LPS, 2014 U.S. Dist. LEXIS 27963, at *5-6 (D. Del. Mar. 5, 2014) (weighing the simplification factor in favor of a stay where the patent in suit was a continuation of a patent at issue in an ITC investigation and the related patents shared common inventors, a common specification, and a common prosecution history).

#### 1.     A Stay Would Simplify Overlapping Non-Infringement Issues

Every asserted claim of the '997 patent in C.A. 18-1064 contains the limitation "applying the refold solution to a separation matrix." C.A. 18-1064, D.I. 1, ¶ 84, Ex. A. The parties agreed in C.A. 18-1064 that "applying the refold solution to a separation matrix" means "applying the refold solution to a separation matrix without intervening steps of dilution, centrifugation, dialysis, or precipitation." C.A. 18-1064, D.I. 55, at 25. Every asserted claim of the '392 patent in this action also contains the limitation "applying the refold solution to a separation matrix." D.I. 1, ¶ 95; Ex. 1. Because the same "applying" claim phrase appears in both the related

'997 and '392 patents, that phrase carries the same agreed-to meaning in this case. *See, e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("We presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").

Based on the parties' agreed-to construction for the "applying" claim phrase, Pfizer has argued in C.A. 18-1064 that its manufacturing process does not infringe the asserted claims because it contains one or more of the disclaimed intervening steps. Pfizer's non-infringement arguments based on such intervening step(s) would apply equally in this case. Therefore, a determination in C.A. 18-1064 that Pfizer's process contains one or more of the disclaimed intervening steps would dispose of this case altogether. *See Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 181 (D. Del. 2019) ("The doctrine of issue preclusion, sometimes called collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.") (internal quotation marks and citations omitted).

Amgen's response to Pfizer's non-infringement arguments to date has been that the meaning of the disclaimed intervening steps is limited to the precise subject matter that was disclosed in the Wang reference that is cited in the '997 patent and the Oliner reference that was overcome during prosecution. *See, e.g.*, C.A. 18-1064,

8


D.I. 143, Ex. 10 at ¶ 41; C.A. 18-1064, D.I. 107, Defendants' Dec. 3, 2019 Letter Brief in Support of their Motion to Strike. Notwithstanding Amgen's representations regarding the meaning of the intervening steps during the December 2019 discovery hearing, and this Court's directive at that hearing, Amgen's expert Dr. Zydney relies on only those two references to support the meaning of the disclaimed intervening steps. C.A. 18-1064, D.I. 143, Ex. 10 at ¶ 41; D.I. 143, Ex. 9 at 20:19-22:20. Amgen's other technical expert, Dr. Rosenblatt, made clear at his deposition that he will offer no opinions on the meaning of the intervening steps at trial. C.A. 18-1064, D.I. 143 at 3. Amgen should not be permitted in this case an opportunity to offer testimony from a third (or possibly fourth) technical expert on identical claim terms.

The potential for efficiencies to be gained on the non-infringement issues by staying this case do not end with the intervening steps. Every asserted claim of the '997 and '392 patents also requires a "refold buffer." In C.A. 18-1064, the Court construed "refold buffer" based on language in the specification and the claims that is identical in the two patents. Although Amgen has identified components of the alleged "refold buffer" in Pfizer's process in this case that differ from the components that Amgen identified in C.A. 18-1064, the "refold buffer" in Pfizer's process must necessarily be the same solution with respect to both patents. Moreover, Amgen should not be permitted to test different infringement theories in

its two patent infringement cases on this identical, and potentially case-dispositive, claim term. A determination regarding the presence or absence of a refold buffer in Pfizer's process in C.A. 18-1064 should be equally applicable here and will simplify the issues to be tried to a jury in this case.

### 2. A Stay Would Simplify Overlapping Invalidity Issues

The invalidity issues in this case will also be simplified by a stay. For example, in C.A. 18-1064, Pfizer has alleged that the same manufacturing process accused of infringement here by Amgen was on sale or offered for sale in the United States by Pfizer's predecessor-in-interest, Pliva Croatia, Ltd. ("Pliva"), more than one year before the earliest alleged filing date of the '997 patent. One of the bases for the on-sale bar is a Development, Supply, and Marketing Agreement entered between Pliva and U.S.-based Barr Laboratories, Inc. ("Barr") in 2005 ("2005 Agreement"), whereby Pliva agreed to use the accused process to manufacture Barr's commercial requirements of filgrastim for marketing in the United States.

Where, as with both suits at issue here, the entire basis of the lawsuit is Amgen's contention that Pfizer's manufacturing process infringes the asserted claims of the respective patent, Pfizer's burden to demonstrate that the accused process is an embodiment of the claimed invention is met by Amgen's allegation that Pfizer's process infringes. *See, e.g.*, *Evans Cooling Sys. v. GMC*, 125 F.3d 1448, 1450-52 (Fed. Cir. 1997). The only issues to be addressed are therefore (1) whether

the 2005 Agreement is a sale and/or offer for sale as a matter of law, and (2) whether the Pliva process that was the subject of the 2005 Agreement is, with respect to the asserted claims, materially identical to the accused process. Any determination in C.A. 18-1064 as to the first issue would be preclusive in this case. The second issue would also be at least simplified in this case because Amgen has accused the same Pfizer process of infringement here.

Moreover, Pfizer has also alleged that the asserted claims of the '997 patent are invalid as anticipated, obvious, for lack of an enabling disclosure, and for inadequate written description. Many of those invalidity defenses will also apply to the asserted claims of the '392 patent. To the extent that there are factual determinations regarding the scope and content of the prior art, or level of skill in the art, in C.A. 18-1064, those determinations would streamline Pfizer's invalidity defenses in this case.

### B. Discovery in this Case Has Not Begun and No Trial Date Has Been Set

Amgen's first patent suit with respect to Pfizer's Nivestym®, C.A. 18-1064, has been pending for almost two years. Fact and expert discovery are complete on all but Pfizer's on-sale bar and public-use invalidity defenses, and a five-day jury trial is scheduled for May 2021.

In contrast, this case is in its infancy. Amgen filed its complaint just over two months ago. D.I. 1. The parties have not held a Rule 26(f) conference and there is

no scheduled Rule 16(b) conference. The parties have yet to initiate fact discovery and no trial date has been set. This factor weighs strongly in favor of a stay. *See, e.g.*, *Nestle Oil Oyj v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *15-16 (D. Del. July 2, 2013) ("This factor weighs strongly in favor of granting a stay, as the present case is in its infancy. There has been no scheduling conference, no trial date has been set, and no discovery has taken place."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-cv-1107 (GMS), 2014 U.S. Dist. LEXIS 47430, at *23-24 (D. Del. Apr. 7, 2014) (weighing the "stage of litigation" factor strongly in favor of granting a stay because the litigation was "still in its early stages" where "[t]here is not yet a case scheduling order in place nor has discovery begun nor has a trial date been set").

      **C.**    **Amgen Will Not Be Unduly Prejudiced by a Stay**

Finally, a stay would neither unduly prejudice nor present a clear tactical disadvantage to Amgen. Rather, absent a stay, Pfizer would be prejudiced because Amgen would have an avenue for a do-over of two-year old litigation. Moreover, additional factors to be considered here—including the timing of this stay request and the relationship of the parties—demonstrate that Amgen would not suffer undue prejudice as a result of a stay. *See Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508-11 (D. Del. 2012).

### 1.     Pfizer Promptly Filed its Motion to Stay

In general, "the less time that a party waits to file a motion to stay . . . the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." *See Ever Win*, 902 F. Supp. 2d at 508. As discussed above, there has been little substantive activity in this case. Therefore, the timing subfactor weighs in favor of finding that Amgen will not be prejudiced by a stay.

### 2.     The Parties' Competitive Status Will Not Be Impacted by a Stay

Although the parties are competitors in the market for filgrastim and other biologic drug products, the parties' status as competitors will not be impacted by a stay here. At the time of its launch in 2018, Pfizer's Nivestym® was at least the fourth market entrant. Competition between Amgen's Neupogen® drug product and Pfizer's Nivestym® biosimilar, along with Granix® and Zarxio®, will continue whether or not this case is stayed. The presence of other competitors in the market decreases the likelihood that Amgen will be prejudiced by a stay. *See, e.g.*, *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764, at *15-16 (D. Del. Oct. 21, 2013); *LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 12-1063-LPS-CJB, 2015 U.S. Dist. LEXIS 167153, at *19-20 (D. Del. Dec. 11, 2015).

Moreover, Amgen has never sought to enjoin the launch of Pfizer's Nivestym®. On January 5, 2018, during the BPCIA "patent dance" that preceded

13

Amgen's filing of its complaint in C.A. 18-1064, Pfizer provided Amgen with notice of commercial marketing pursuant to 42 U.S.C. § 262(*l*)(8)(A). In the time between receiving Pfizer's notice of commercial marketing and Pfizer's launch, Amgen did not seek a preliminary injunction. *See* 42 U.S.C. § 262(*l*)(8)(B). Amgen's failure to seek a preliminary injunction to prevent Pfizer from launching Nivestym® weighs against a finding of undue prejudice. *See Ever Win*, 902 F. Supp. 2d at 510-11.

Finally, Amgen has not alleged that it practices the asserted '392 patent claims to purify the filgrastim protein in Neupogen®. *See* D.I. 1. To the extent that Amgen does not market a filgrastim product covered by the asserted claims, that factor also weighs in favor of a finding of no undue prejudice to Amgen. *See, e.g.*, *Graphic Props. Holdings*, 2014 U.S. Dist. LEXIS 27963, at *5-6.

## V. CONCLUSION

Accordingly, Pfizer respectfully requests that the Court enter an order staying this case pending the resolution of C.A. 18-1064.

<table>
<tr><td>

*Of Counsel:*

Dimitrios T. Drivas
Alison Hanstead
John Scheibeler
Kevin Georgek
Brigid Bone
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200

Elizabeth Chang
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0319

Date: July 10, 2020

</td><td>

CONNOLLY GALLAGHER LLP

/s/ *Arthur G. Connolly, III*
Arthur G. Connolly III (#2667)
Ryan P. Newell (#4744)
Stephanie S. Riley (#5803)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
Facsimile: (302) 757-7299
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
sriley@connollygallagher.com

*Attorneys for Pfizer Inc. and Hospira, Inc.*

</td></tr>
</table>

15

# CERTIFICATION OF COMPLIANCE WITH THE NOVEMBER 6, 2019 STANDING ORDER REGARDING BRIEFING IN ALL CASES AND RULE 7.1.1 CERTIFICATION

I hereby certify that this brief is in 14-point Times New Roman font and that it contains 3,426 words as determined by Microsoft Word, excluding the Table of Contents and Table of Authorities. I also certify that the subject of the foregoing motion has been discussed by telephone with counsel for Plaintiffs and that the discussion involved Delaware counsel for all parties. Despite the parties' efforts to resolve this dispute, the parties were unable to reach agreement.

*/s/ Arthur G. Connolly, III*
Arthur G. Connolly III (#2667)